UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DORIS SPEED ANDREWS, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *  Civil Action No. 11-10232-JLT |
| | * |
| MASSACHUSETTS BAY TRANSIT | * |
| AUTHORITY and BOSTON CARMEN'S | * |
| UNION, DIVISION 589, | * |
| | * |
| Defendants. | * |

MEMORANDUM

May 31, 2012

TAURO, J.

I. Introduction

Plaintiff was employed by Defendant Massachusetts Bay Transit Authority ("MBTA") and was a member of Defendant Boston Carmen's Union, Division 589 ("Union"). On May 20, 2009, Defendant MBTA filled out a notice of separation form stating that Plaintiff resigned. Plaintiff filed suit for, *inter alia*, violations of the Mass. Gen. Laws ch. 151B, Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and the Family and Medical Leave Act ("FMLA"). Currently at issue are Defendant MBTA's Motion to Dismiss [#22], Defendant Union's Motion to Dismiss [#25], Defendant MBTA's Motion to Strike Plaintiff's Response to Motion to Dismiss [#33], and Plaintiff's Motion for Leave to File Second Amended Complaint [#35].

1

II. Background[1]

    A.    Factual Background

Defendant MBTA hired Plaintiff as a part-time Green Line streetcar motorperson in August, 2000.[2] Defendant MBTA promoted Plaintiff to full-time in September 2001.[3] In July 2004, Plaintiff was the operator of the second car on a two-car train. As the second operator, Plaintiff had no control over the speed of the train. Plaintiff contacted the operator of the first car to inform the operator that he was operating at an excessive speed. The operator ignored Plaintiff, and Plaintiff contacted Central Control, which broadcast her report over the air. Afterward, Plaintiff received persistent and pervasive harassing comments from her co-workers.[4]

On July 18, 2004, in the course of her employment, "Plaintiff sustained permanent injuries to her knee and back[,]"[5] and she requested leave under the FMLA.[6] On July 25, 2004, "Plaintiff was diagnosed with a torn meniscus and two misaligned disks [sic] touching her nerves."[7] Her physician advised her to take an indefinite leave of absence.[8] On July 26, 2004, Defendant MBTA

---

[1] Because the issues analyzed here arise in the context of a motion to dismiss, this court presents the facts as they are related in Plaintiff's Complaint, Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008), and construes those facts in the light most favorable to Plaintiff, see Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)).

[2] Am. Compl., ¶ 10 [#16].

[3] Am. Compl., ¶10.

[4] Am. Compl., ¶ 13.

[5] Am. Compl., ¶ 14.

[6] Am. Compl., ¶ 14.

[7] Am. Compl., ¶ 15.

[8] Am. Compl., ¶ 16.

contacted Plaintiff at her home, and asked Plaintiff to report to the MBTA's Green Line office by telephone once every two weeks.[9] During one of these phone calls, an employee of Defendant MBTA told Plaintiff that she "could not avail herself of FMLA-protected leave, and as such her current leave classification as being under FMLA was incorrect."[10] In January 2005, Plaintiff applied for Worker's Compensation. Her claim was denied, and she did not appeal the denial.[11]

On March 18, 2005, Defendant MBTA informed Plaintiff that they had job openings in its "light-duty program." Plaintiff was told that she could interview for either a collector and/or a flagperson position. Plaintiff's doctor informed her that he did not think she should take either position because of her injuries. Plaintiff's doctor wrote a letter to Defendant MBTA stating the same.[12]

In July 2006, Plaintiff received a letter from Defendant MBTA's Superintendent Debbie Geis ordering Plaintiff to appear at Geis's office on August 9, 2006. On August 9, Plaintiff met with Geis and Plaintiff's union representative, Barn Captain Michael McPhee. Geis agreed that Plaintiff had too many medical limitations to return to work as a streetcar motorperson. Plaintiff asked about becoming a customer service agent ("CSA") and was informed that the CSA positions were filled based on seniority. Geis instructed Plaintiff to continue calling in every two weeks with updates on her condition.[13]

"On or about August 23, 2006, Plaintiff provided Defendant [MBTA] with medical

---

[9] Am. Compl., ¶ 17.

[10] Am. Compl., ¶ 18.

[11] Am. Compl., ¶ 19.

[12] Am. Compl., ¶ 20.

[13] Am. Compl., ¶ 21.

3

documentation that indicated that Plaintiff could return to work as of September 24, 2006 as a 'light duty employee.'"[14] On October 19, 2006, Plaintiff received a letter ordering her to appear at Geis's office on November 1, 2006. At the meeting, Geis informed Plaintiff that she had to report to Defendant's medical clinic for a physical examination. The examination determined that Plaintiff was temporarily disqualified for her position as a streetcar motorperson and that Plaintiff was qualified to become a CSA. "On October 31, 2006, Plaintiff provided Defendant [MBTA with] a letter from her physician stating that Plaintiff may return to work in a 'light duty' capacity effective immediately."[15] Plaintiff subsequently learned that employees with less seniority than her were becoming CSAs.[16]

Plaintiff filed a charge against Defendant MBTA with the Massachusetts Commission Against Discrimination ("MCAD") on December 27, 2006. In her charge, Plaintiff alleged that Defendant MBTA violated the ADA "in refusing to make reasonable accommodations to Plaintiff's known physical limitations."[17] The MCAD issued a finding of lack of probable cause in August 2007.[18]

Upon the request of Defendant MBTA Manager Ruthie Gray, Plaintiff had her physician complete a medical service form.[19] Plaintiff returned this form to Defendant MBTA on January 16, 2008. On January 23, 2008, Plaintiff appeared for an examination by Defendant MBTA's

---

[14] Am. Compl., ¶ 22.

[15] Am. Compl., ¶ 24.

[16] Am. Compl., ¶ 23.

[17] Am. Compl., ¶ 25.

[18] Am. Compl., ¶ 26.

[19] Am. Compl., ¶ 27.

clinic. The clinic cleared Plaintiff to return to work as a CSA.[20]

Plaintiff was told to contact Mark Casino, an employee of Defendant MBTA's Red Line, regarding a CSA position. Mr. Casino told Plaintiff that according to the information that he had in front of him on his computer, Plaintiff was not on the CSA wait list. Plaintiff's name appeared, instead, on a "dummy" wait list.[21]

In February 2008, while making one of her regular phone calls to Defendant MBTA, an individual named Fred informed Plaintiff that she was no longer an employee of the Green Line. Fred told Plaintiff that she now worked for the Red Line, and that she was on a wait list for a CSA position.[22] On September 8, 2008, Plaintiff filed a second complaint with MCAD against Defendant MBTA. Plaintiff alleged that Defendant failed to provide reasonable accommodation by not assigning her to a CSA position.[23]

Plaintiff received notification on May 6, 2009 "that she was to report to Green Line Supervisor, Andrea Gordon, on May 20, 2009, to discuss the status of her employment."[24] Plaintiff changed the interview date to May 11, 2009.[25] On May 11, Plaintiff and her representative from Defendant Union met with Gordon. Gordon charged Plaintiff with violating Defendant MBTA's attendance policy and general rules. To avoid immediate termination, Gordon required Plaintiff to sign two documents that asserted Plaintiff's agreement to return to

---

[20] Am. Compl., ¶ 28.

[21] Am. Compl., ¶¶ 27-28.

[22] Am. Compl., ¶ 30.

[23] Am. Compl., ¶ 32.

[24] Am. Compl., ¶ 35.

[25] Am. Compl., ¶ 35.

full-time work as a streetcar operator on May 18, 2009. The documents stated that if Plaintiff did not appear for work on May 18, she had voluntarily resigned her position.[26]

Plaintiff's medical provider filled out a form stating that Plaintiff could immediately return to light duty employment, but that she could not drive or lift. Plaintiff's medical provider forwarded this form to Defendant MBTA's medical clinic on May 14, 2009.[27] On May 18, 2009, Plaintiff brought a letter from her medical provider to Gordon's office. The letter stated that Plaintiff could not work as a streetcar motorperson.[28]

Plaintiff also filed a grievance report with Defendant Union on May 18, stating that she felt coerced into signing the contract presented to her on May 11, 2009. Plaintiff's letter also stated that her union representative breached his duty by failing to fairly represent her at this meeting because he compelled Plaintiff to sign the contract.[29]

When Gordon filled out Plaintiff's notice of separation form on May 20, 2009 she listed "resignation" and "other" as the reasons for the separation. Gordon specified on the form that "other" referred to the fact "that Plaintiff had been permanently disqualified as a trolley driver."[30]

B.  Procedural Background

Plaintiff filed a Complaint [#1] against Defendant MBTA pro se in United States District Court for the District of Massachusetts on February 8, 2011. Defendant MBTA filed a Motion for a More Definite Statement [#10] on June 9, 2011, which the court allowed. Plaintiff obtained

---

[26] Am. Compl., ¶ 36.

[27] Am. Compl., ¶ 37.

[28] Am. Compl., ¶ 38.

[29] Am. Compl., ¶ 39.

[30] Am. Compl., ¶ 40.

counsel, and on October 31, 2011, filed an Amended Complaint [#17] against Defendant MBTA and Defendant Union.  Plaintiff brought the following seven claims against Defendant MBTA: (1) violation of and retaliation under the ADA and Mass. Gen. Laws ch. 151B; (2) violation of the FMLA; (3) violation of and retaliation under Title VII; (4) violation of the Age Discrimination in Employment Act ("ADEA"); (5) hostile work environment / harassment;     (6) violation of the Labor Management Relations Act ("LMRA"); and (7) intentional infliction of emotional distress and negligent misrepresentation.  Plaintiff also brought one claim for violation of the LMRA against Defendant Union.

On December 21, 2011, Defendant MBTA filed a Motion to Dismiss [#22], and Plaintiff filed a Response [#28] on January 7, 2012.  On January 19, 2012, Defendant MBTA filed a Motion to Strike Plaintiff's Response to Motion to Dismiss [#33].

On January 3, 2012, Defendant Union filed a Motion to Dismiss [#25].  Plaintiff filed an Opposition to Defendant Union's Motion to Dismiss on January 17, 2012, and filed an Amended Memorandum in Support of Plaintiff's Opposition to Defendant Union's Motion to Dismiss [#32] on January 18, 2012.

On February 8, 2012, Plaintiff filed a Motion for Leave to File Second Amended Complaint [#35].  Defendant MBTA filed an Opposition to Plaintiff's Motion for Leave to Filed Second Amended Complaint [#39] on February 22, 2012.

Currently before the court are four pending motions: (1) Defendant MBTA's Motion to Dismiss [#22]; (2)  Defendant MBTA's Motion to Strike Plaintiff's Response to Motion to Dismiss [#33]; (3) Defendant Union's Motion to Dismiss [#25]; and (4) Plaintiff's Motion for Leave to File Second Amended Complaint [#35].

III.   Discussion

A. Standard for a Motion to Dismiss

In order "to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'"[31] A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[32] The court construes facts in the light most favorable to the plaintiff, but it "need not accept a plaintiff's assertion than a factual allegation satisfies an element of a claim . . . nor must a court infer from the assertion of a legal conclusion that factual allegations could be made that would justify drawing such a conclusion."[33]

B. Defendant MBTA's Motion to Dismiss[34]

1. Violation of and retaliation under the ADA and Mass. Gen. Laws ch. 151B

Mass. Gen. Laws ch. 151B, § 4(16) states that it is unlawful:

> [f]or an employer . . . to dismiss from employment . . . or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitation of the person would impose an undue hardship to the employer's business.

As the statute makes clear, Mass. Gen. Laws ch. 151B, § 4(16) only applies to the "position involved." The requirement that an employer make "reasonable accommodation" for an employee alleging to be a qualified handicapped person does not, therefore, include creating a new position

---

[31] Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).

[32] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

[33] Cordero-Hernandez v. Hernandez-Ballesteros, 449 F.3d 240, 244 n.3 (1st Cir. 2006).

[34] Plaintiff has conceded the following claims: violation of the Age Discrimination in Employment Act (Count IV), and claim of hostile work environment / harassment (Count V). See Pl.'s Resp. Def. [MBTA's] Mot. Strike Pl.'s Opp'n Def.'s Mot. Dismiss, at 8.

for that employee or reassigning that employee to a vacant position.[35] Reasonable accommodation, thus, is limited to modifying the form of the employee's existing position.[36]

In this respect, Massachusetts law differs from federal law. Under the ADA, it is unlawful to "discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . ."[37] Discrimination consists of "not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an . . . employee . . . ."[38] As the ADA states, "[t]he term 'reasonable accommodations' may include . . . (B) . . . reassignment to a vacant position."[39] The ADA, thus, unlike Mass. Gen. Laws 151B, may consider failure to reassign a qualified individual to a vacant position as a form of discrimination.[40]

Here, Defendant MBTA does not dispute that Plaintiff qualifies as disabled under both Mass. Gen. Laws ch. 151B and the ADA. Defendant MBTA's argument, rather, is that it did not violate the reasonable accommodation requirement under either the state or federal law. It is clear from the Amended Complaint that Plaintiff was not capable of performing the duties of a streetcar motorperson, the position involved. Plaintiff's own doctor stated this in the letter that

---

[35] See Russell v. Colley Dickinson Hosp., Inc., 437 Mass. 443, 545 (2002).

[36] See Furtado v. Standard Parking Corp., 820 F. Supp. 2d 261, 277-78 (D. Mass. 2011).

[37] 42 U.S.C. § 12112(a) (supp. 2010).

[38] 42 U.S.C. § 12112(b)(5)(A).

[39] 42 U.S.C. § 12111(9) (supp. 2010).

[40] Furtado, 820 F. Supp. 2d at 278 (D. Mass. 2011) ("The ADA is more protective of employees than Massachusetts General Laws chapter 151B and requires that employers reassign employees to vacant positions as a form of reasonable accommodation.").

Plaintiff brought to Gordon's office on May 18, 2009.[41] Defendant MBTA, therefore, did not violate Mass. Gen. Laws ch. 151B because under the statute it had no obligation to create a new position or reassign Plaintiff to a vacant position.

Plaintiff has, however, provided requisite factual allegations in her Amended Complaint to survive a motion to dismiss for failure to state a claim under the ADA. The ADA requires Defendant MBTA to reassign Plaintiff to a vacant position unless such a reassignment is unduly burdensome. Defendant states that CSA positions were filled based on seniority, and that Plaintiff was placed on a wait list for a CSA position. Plaintiff alleges that individuals with less seniority than her were hired as CSAs, and that in 2008 she learned that her name was actually placed on a dummy wait list for a CSA position.[37] Whether there were open CSA position available at the time Plaintiff's employment was terminated is a question best addressed during discovery. At this stage, however, Plaintiff has stated a valid claim under the ADA.

Plaintiff's claims for violations of the ADA are limited to those actions that formed the basis of her third complaint of discrimination with the Massachusetts Commission Against Discrimination ("MCAD"), which Plaintiff filed on March 24, 2010.[38] The ADA does not contain a statute of limitations. For this reason, "a federal court will borrow the statute of limitations that applies to the state cause of action most analogous to a claim of discrimination under the ADA . . . ."[39] Plaintiff's ADA claim is most analogous to a Mass. Gen. Laws ch. 151B claim, which

---

[41] Am. Compl., ¶ 38 ("This letter indicated that Plaintiff could no longer safely perform the duties of the Streetcar Motorperson.").

[37] Am. Compl., ¶¶ 23, 29,

[38] See Am. Compl., ex. A, at 13.

[39] Dube v. Wyeth Biotech, No. 10-11316-RGS, 2011 WL 134053, at *1 (D. Mass. Jan. 14, 2011).

10

contains a three-year statute of limitations.[40]  Allegations based on either of Plaintiff's two prior MCAD complaints–filed on December 27, 2006, and September 9, 2008, respectively–are barred by this three-year statute of limitations.

Plaintiff also brings claims of retaliation under the ADA and Mass. Gen. Laws ch. 151B. A claim for retaliation under these statutes is distinct from a claim of discrimination under the statutes.[41]  In Swierkiewicz v. Sorema N.A., the Supreme Court held that a plaintiff need not establish a prima facie case of retaliation in order to survive a motion to dismiss in employment discrimination cases.[42]  The plaintiff, rather, need only satisfy the pleading requirements of Fed. R. Civ. P. 8.  The Court decided Swierkiewicz before Twombly and Iqbal changed the pleading requirement by holding that in order "to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'"[43]  Neither the First Circuit nor the Supreme Court has discussed to what extent Swierkiewicz remains good law after Twombly and Iqbal, but the District of Rhode Island has attempted to reconcile the cases.[44]  The court has stated that "a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss, but the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim."[45]  This court finds the District of Rhode Island's approach to Swierkiewicz, Twombly, and

---

[40] Mass. Gen. Laws. ch. 151B, § 9.

[41] Furtado, 820 F. Supp. 2d at 273.

[42] 534 U.S. 506, 512 (2002).

[43] Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559).

[44] Mayale-Eye v. Merrill Lynch, 754 F. Supp. 2d 372, 377 (D.R.I. 2010).

[45] Id.

11

Iqbal persuasive, and will, therefore, apply it here.

In the Amended Complaint, Plaintiff has provided Defendant MBTA with fair notice of the basis of the claim. Plaintiff alleges that Defendant MBTA retaliated against her by terminating her employment in May 2009 "for exercising a protected right under the ADA and [Mass. Gen. Laws] ch. 151B."[46]

Plaintiff's claim is also facially plausible. Defendant MBTA argues that Plaintiff did not suffer an adverse employment action because all that occurred in May 2009 was that her name was removed from the inactive payroll.[47] In her Amended Complaint, however, Plaintiff provides a set off facts that suggest that she was forced to resign.[48] Whether or not the events of May 2009 constitute an adverse employment action is not ripe for decision at this stage. For the purposes of a motion to dismiss, Plaintiff has provided enough detail for the events of May 2009 to plausibly be considered an adverse employment action.

Defendant MBTA next argues that the time difference between the alleged protected activity, filing an MCAD complaint, and the adverse employment action is too great to establish a causal connection. Plaintiff filed her second MCAD complaint in September 2008 and her employment was terminated in May 2009. Defendant MBTA cites a series of cases to suggest that a complaint for retaliation should be dismissed when there is a significant time period of time separating the protected activity and the adverse employment action.[49] These cases are inapposite because each one of them deals specifically with dismissing the claims at summary judgment, not

---

[46] Am. Compl., ¶ 47.

[47] Mot. Dismiss, at 12 [#23].

[48] Am. Compl., ¶¶ 36-40.

[49] Mot. Dismiss, at 13.

12

under Fed. R. Civ. P. 12(b)(6). Further discovery may determine that there is no causal connection between the MCAD complaint and the events of May 2009. At this stage, however, Plaintiff need only establish facial plausibility of retaliation, which she has.

Finally, Defendant MBTA argues that Plaintiff has not demonstrated that Defendant MBTA had a retaliatory motive for the adverse employment action.[50] Retaliatory motive is necessary to establish the causal connection element of a prima facie case of retaliation.[51] It is not required, however, that Plaintiff establish a retaliatory motive to survive a motion to dismiss. Defendant MBTA knew of Plaintiff's protected activity, and it is facially plausible that Defendant MBTA did act with retaliatory animus toward Plaintiff. For these reasons, Plaintiff has provided Defendant MBTA with fair notice of the basis of her retaliation claim, and she has stated a retaliation claim that is facially plausible.

### 2. Violation of the FMLA

Plaintiff's second claim is for violation of the FMLA. The FMLA has a two year statute of limitations that runs from the "date of the last event constituting the alleged violation for which the action is brought."[52] The statute of limitations is extended to three years for willful violations of the FMLA.[54] The alleged violation that occurred in 2004 when Defendant MBTA informed Plaintiff that it would not classify her absence from work as FMLA leave.[55] This occurred at least six years before Plaintiff filed suit in this case. Plaintiff's claim for violation of the FMLA is,

---

[50] Mot. Dismiss, at 13.

[51] Lewis v. Gillette Co., 22 F.3d 22, 24 (1st Cir. 1994).

[52] 29 U.S.C. § 2617(c)(1) (supp. 2011).

[54] 29 U.S.C. § 2617(c)(2).

[55] Am. Compl., ¶ 18.

therefore, time-barred.

Plaintiff argues that the court should apply the continuing violation doctrine to her FMLA claim. The continuing violation doctrine allows "a plaintiff who ordinarily would be unable to recover damages for discrete acts of discrimination falling outside the limitations period [to] avoid that bar if those acts are shown to be part of a pattern of discrimination anchored by acts that occurred within the limitations period."[56] For the doctrine to apply, "the anchoring event must 'substantially relate[] to earlier incidents of abuse . . . .'"[57]

Here, Plaintiff cannot point to any anchoring event that occurred within the statute of limitations. Plaintiff attempts to use her claim for violation of the ADA as her anchoring event, but the events underlying the violation of the ADA and the events underlying th violation of the FMLA are not substantially similar for the purposes of the continuing violation doctrine. Plaintiff's claim for violation of the FMLA is based on events that occurred in 2004, a full two years before Plaintiff first inquired about a CSA position, the denial of which underlies her ADA claim.[59] Her FMLA claim relates exclusively to the denial of FMLA leave when she was injured in 2004. Her ADA claim relates exclusively to Defendant MBTA's alleged failure to employ her as a CSA, which has nothing to do with Plaintiff's denial of FMLA leave in 2004. The continuing violation doctrine, therefore, does not save Plaintiff's otherwise time-barred FMLA claim, and the court declines to apply it.

---

[56] Noviello v. City of Boston, 398 F.3d 76, 86 (1st Cir. 2005).

[57] Id. (quoting Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 533 (2001)); see also O'Rourke v. City of Providence, 235 F.3d 713, 731 (1st Cir. 2001) (stating one criterion for determining whether to apply the doctrine as: "is the *subject matter* of the discriminatory acts sufficiently similar that there is a substantial relationship between the otherwise untimely acts and the timely acts?").

[59] Am. Compl., ¶ 21.

### 3. Violation and Retaliation under Title VII

Plaintiff's third claim is for "unlawful employment practice under [42 U.S.C. § 2000e-3(a)]."[60] This section of Title VII states that it is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge . . . in any manner in an investigation, proceeding, or hearing under this subchapter."[61] The unlawful employment practices referred to are stated in 42 U.S.C. § 2000e-2, and they are limited to various acts of discrimination based on an "individual's race, color, religion, sex, or national origin . . . ."[62]

Here, Plaintiff has failed to state a claim for violation of Title VII. The Amended Complaint includes no factual allegations that Defendant MBTA discriminated against Plaintiff based on race, religion, sex, or national origin. Plaintiff's MCAD charges are, similarly, not allowed to be based on such discrimination.[63]

### 4. Violation of the Labor Management Relations Act

Plaintiff alleges a hybrid § 301/fair representation claim against Defendant MBTA for

---

[60] Am. Compl., ¶¶53-57.

[61] 42 U.S.C. § 2000e-3(a) (supp. 2010).

[62] 42 U.S.C. § 2000e-2.

[63] There may be some confusion regarding Title VII. The ADA states: "The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment. 42 U.S.C. § 12117(a). This provision only means that the ADA adopted the powers, procedures, and remedies of Title VII for individuals asserting a claim under the ADA. Claims of violation of the ADA and retaliation in violation of the ADA, however, remain separate and distinct in nature from claims of violation of and retaliation in violation of Title VII.

15

breach of the collective bargaining agreement and Defendant Union for breach of its duty of fair representation.[64] Hybrid actions are subject to a six-month statute of limitations that begins to run "when the prospective plaintiffs knew, or reasonably should have known, of the alleged wrongful acts."[66] In Arriaga-Zayas, the First Circuit determined that the statute of limitations began to run no later than when the plaintiffs in that case filed an informative motion to their previously filed charge with the Puerto Rico Labor Relations Board.[67] The motion amended the charge by adding the union, who became a defendant in the civil action, as a respondent.[68] Here, the six month statute of limitations started running no later than May 18, 2009 when Plaintiff filed a grievance with her union. Like the plaintiffs in Arriaga-Zayas, by filing a grievance, Plaintiff established that she knew of the alleged wrongful acts as of that moment in time, at the latest. Plaintiff subsequently filed this suit on February 8, 2011, well beyond the six-month statute of limitations.

Plaintiff has argued that the doctrine applied by the Supreme Judicial Court in Leahy v. Local 1526, Am. Fed. Of State, County, and Municipal Employees, 399 Mass. 341 (1987), should apply in this case. The doctrine applied in Leahy, however, is not on point. In that case, the SJC determined that the state court had concurrent jurisdiction with the Massachusetts Labor Relations Commission (now the Commonwealth Employment Relations Board) to hear that

---

[64] See Reed v. United Transp. Union, 488 U.S. 319, 331 (1989) ("hybrid § 301/fair representation claims, . . . directly challenge both the employer's adherence to the collective-bargaining agreement and the union's representation of the employee in grievance-and-arbitration procedures.").

[66] Adorno v. Crowley Towing and Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006).

[67] Arriaga-Zayas v. Int'l Ladies' Garment Worker's Union-Puerto Rico Council, 835 F.2d 11, 13 (1st Cir. 1987).

[68] Id. at 12.

16

specific case of breach of duty of fair representation.[69] The SJC in Leahy did not focus on the six-month statute of limitations that applies to hybrid actions, and Plaintiff here has offered no other argument for tolling the statute of limitations. Plaintiff's claim for violation under the LMRA is, therefore, time-barred.

> 5. Intentional Infliction of Emotional Distress and Negligent Misrepresentation

To the extent that count VII of the Amended Complaint alleged intentional infliction of emotional distress, Plaintiff has conceded this claim.[70]

As regards Plaintiff's allegation of negligent misrepresentation, Mass. Gen. Laws ch. 151B "provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections . . . ."[71] A plaintiff, thus, cannot recast claims brought, or that should have been brought, under ch. 151B as independent claims.[72] Plaintiff, here, consequently, cannot bring a negligent misrepresentation claim that is based on the same underlying facts as her ch. 151B claims and which she could have originally brought in her MCAD charge.

C. Defendant Union's Motion to Dismiss

Plaintiff brought one claim against Defendant Union, breach of duty to fair representation

---

[69] Leahy v. Local 1526, Am. Fed. Of State, County, and Municipal Employees, 399 Mass. 341, 351 (1987).

[70] Pl.'s Resp. Def. [MBTA's] Mot. Strike Pl.'s Opp'n Def.'s Mot. Dismiss, at 8.

[71] Charland v. Muzi Motors, Inc., 417 Mass. 580, 589 (1994).

[72] See Gasior v. Massachusetts General Hosp., 446 Mass. 645, 651, n.8 (2006) ("As an employer of six or more persons, [defendant] was obligated to comply with the provisions of G.L. c. 151B. [Plaintiff] could, therefore, not maintain a common-law breach of contract claim for [defendant's] allegedly discriminatory dismissal of him because any such claim would be preempted by G.L. c. 151B.") (internal citations omitted); see also Robinson v. City of Boston, 887 N.E.2d 261, 263 (Mass. App. Ct. 2008).

under the LMRA. As described above, this is part of a hybrid action under § 301 of the LMRA, which has a strict six-month statute of limitations.[73] Plaintiff failed to file this civil action within six months of knowing of the alleged wrongful acts. Defendant Union's Motion to Dismiss is, therefore, ALLOWED.

        D.        <u>Plaintiff's Motion for Leave to File Second Amended Complaint</u>

Fed. R. Civ. P. 15(a)(2) governs amending the complaint when it is not a matter of course. It reads: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."[74] Leave to amend may be denied for several reasons, including "futility of amendment."[75]

On February 8, 2012, Plaintiff filed a <u>Motion for Leave to File Second Amended Complaint</u> [#35]. Plaintiff specifically seeks to amended her complaint in the following manner: (1) delete her violation of the ADEA claim; (2) delete her harassment claim; (3) modify her negligent misrepresentation claim; (4) add a claim of estoppel; (5) assert a claim of invalidation of contract signed by Defendants and Plaintiff; (6) modify her breach of duty of fair representation claim against Defendant Union; (7) add a claim of breach of contract against Defendant MBTA; (8) label Plaintiff's claims; and (9) double-space the complaint.

Modifying Plaintiff's claim of negligent misrepresentation does not resolve the fact that such a claim is barred because Mass. Gen. Laws ch. 151B serves as the exclusive remedy for employment discrimination.[76] For the same reason, Plaintiff's claim of estoppel is barred.

---

[73] <u>See</u> <u>supra</u> Part III.A.6.

[74] Fed. R. Civ. P. 15(a)(2).

[75] <u>United States</u> <u>ex rel.</u> <u>Gagne v. City of Worcester</u>, 565 F.3d 40, 48 (1st Cir. 2009).

[76] <u>See</u> <u>Charland</u>, 417 Mass. at 589.

Likewise, even if Plaintiff modified her breach of duty of fair representation claim, it would still remain time barred.[77] As regards these issues, for which amendment would be futile, Plaintiff's Motion for Leave to File Second Amended Complaint is DENIED WITH PREJUDICE.

As stated above, Plaintiff has conceded her claims of violation of the ADEA and her harassment claims.[78] At this moment, the court does not have enough information before it to rule on Plaintiff's request to assert a claim of invalidation of contract and a claim of breach of contract. Plaintiff's Motion, is therefore, DENIED WITHOUT PREJUDICE. Plaintiff has until June 14, 2012, to file a renewed motion for leave to amend the complaint with a proposed amended complaint attached. The proposed amended complaint should reflect the court's ruling on the motions to dismiss and assert claims for invalidation of contract and breach of contract against Defendant MBTA.

IV.     Conclusion

For the foregoing reasons, Defendant MBTA's Motion to Dismiss [#22] is ALLOWED IN PART and DENIED IN PART. The Motion is ALLOWED as it concerns Counts II through VII and violations of Mass. Gen. Laws ch. 151B under Count I. The Motion is DENIED as to violation of the ADA and retaliation under Mass. Gen. Laws ch. 151B and the ADA (the remaining claims under Count I).

Defendant Union's Motion to Dismiss [#25] is ALLOWED.

Plaintiff's Motion for Leave to File Second Amended Complaint[#35] is DENIED IN PART WITH PREJUDICE and DENIED IN PART WITHOUT PREJUDICE. Plaintiff's request

---

[77] See Adorno, 443 F.3d at 126.

[78] See supra Part III.A.4-5.

to amend the <u>Amended Complaint</u> [#16] to modify her harassment claim, modify her negligent misrepresentation claim, add a claim of estoppel, and to add a claim of breach of duty against Defendant Union are DENIED with prejudice. Plaintiff's request to remove her ADEA claim, remove her harassment claim, assert invalidation of contract, assert a claim of breach of contract against Defendant MBTA, label each claim, and double-space the <u>Amended Complaint</u> are DENIED without prejudice.

Defendant MBTA's <u>Motion to Strike Plaintiff's Response to Motion to Dismiss</u> [#33] is DENIED AS MOOT.

AN ORDER HAS ISSUED.

<u>    /s/ Joseph L. Tauro    </u>
United States District Judge